IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF OHIO

EASTERN DIVISION AT COLUMBUS, OHIO

Dale Prey :

45811 Cadiz-Harrisville Rd.

Cadiz, Ohio, 43907 :

    Plaintiff                 Case No. _____

    vs. :              2 20CV0188

Franciscan University of Steubenville        Judge Watson

1235 University Blvd. :        MAGISTRATE JUDGE DEAVERS

Steubenville, Ohio, 43952         **COMPLAINT**

    :

John Does, #1 -#15

Defendants    :

---

**Jurisdiction and Venue:**

    1) This Court has jurisdiction given the context of the employment relationship between Plaintiff and Franciscan University, damaged by the actions of students of the University. Federal law gives this Court jurisdiction over cases which involve employment under Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. §§ 2000e to 2000e-17 and Age Discrimination in Employment Act of 1967, as codified, 29 U.S.C. §§ 621 to 634.

    2) The EEOC issued a Notice of Right to Sue letter, dated 15 October, 2019, which Plaintiff received on, or about, 18 October, 2019.

    3) The Court is also competent to address the underlying issues of State law, as they relate to the actions taken, by the students and the University, which created the hostile

1

environment. Once the University is compelled to reveal the names of the students involved and their home addresses of record, it is likely that diversity jurisdiction will also exist.

4) Plaintiff resides in Harrison County, Ohio. Defendant Franciscan University of Stuebenville is located in Jefferson County, Ohio.

**Cause of Action #1– Violation of Title VII of the Civil Rights Act of 1964, and related Federal and State protections**:

5) Title VII of the Civil Rights Act created five protected classes, generally, including application in the workplace environment. An employer cannot take any action which negatively impacts an employee "because of such individual's race, color, religion, sex, or national origin." The students comments included statements explicitly, and implicitly, referencing religion. Later Federal and State legislation designated age as a similarly protected class. At least one student statement referenced Plaintiff's age, explicitly.

6) While, ultimately, Plaintiff was able to defend himself and was not terminated, the nature of the attacks and the University's response indicated a changing climate, where anyone who was not Catholic could be targeted in just this way.

7) The University's policy on *Harassment and Discrimination* contains specific language stating that anything which is in compliance with Catholic doctrine is not a violation of the policy, or Federal / State laws. However, this is the only specific mention of the legal protections for individuals based on religion. The University policy completely removes one of the original protected classes, Religion, from the list of groups enjoying Federal and State legal protections:

> *"In compliance with state and federal laws, including (but not limited to) Title IX of the Education Amendments of 1972, Section 504 of the Rehabilitation Act of 1973, and Titles VI and VII of the Civil Rights Act of 1964, Franciscan University of Steubenville does not discriminate on the basis of **race, color, national or ethnic origin, sex, age, disability, or***

2

*veteran's status (or any other criteria protected by applicable law) in its educational programs and activities, admissions, or with regard to employment."* (bold emphasis mine)

8) This creates an environment where hostility towards someone who is not Catholic, such as the Plaintiff, is (at best) tolerated, or (at worst) promoted as appropriate behavior for someone who is *"Passionately Catholic."*

9) Plaintiff recognized that the University either could not, or would not, make an effort to identify which of its students might be willing to engage in this kind of attack in the future. The fact that the University's past history indicates a failure to even recognize this as a problem and, for economic reasons, a willingness to put student perceptions on what is *"appropriate Catholic behavior"* over objective facts, created a hostile work environment.

10) Barring a major effort on the part the University to make it clear that such behavior would not be tolerated and a pro-active approach, such as the steps they recently took after finally acknowledging the seriousness of past situations involving allegations against a member of their own religious community, it was reasonable for Plaintiff to expect that he would face these kinds of students in every class he might teach. Thus, the only real option was to give up his position, some three to five years earlier than he had planned.

**Cause of Action #2 – Defamation:**

11) Plaintiff alleges that a group of 8 students (out of a class of 14), did use the University provided anonymous course evaluation system to publish negative statements about him with the express purpose of injuring his professional status and ability to teach classes at Franciscan University. Several of the statements included explicit, or implicit references to membership in a protected class (religion and age), while others were immaterial or intentionally misleading / inaccurate. These course evaluations are used by administration in various ways that impact

3

employment, including teaching assignments, advancement / pay and retention. The evaluations immediately triggered a negative impact on Plaintiff as University Administration followed their policy, and appeared to take all of the allegations as factual representations, etc.

**Cause of Action #3 – Tortious Interference:**

12) Plaintiff alleges that these students knew that there was a contractual relationship between himself and Franciscan University and that they specifically sought, in the plain language of these statements, to interfere with this relationship; the University's initial response was to accept these statements as factual and to require Plaintiff to attend a meeting where he was told that this was unacceptable at Franciscan University, that the students' evaluations would be made a part of his permanent record, that this would / could negatively impact his ability to teach classes in the future and that this situation would be included as part of his annual employee evaluation. These statements, as noted previously, included illegal references to protected classes of religion and age and / or were defamatory.

**Cause of Action #4 – Civil Conspiracy:**

13) Plaintiff alleges that two, or more, of these students acted in concert to obtain their objective, based on the small statistical chances of the different students, acting on their own, using the same language, examples, pathos, or expressed objective of preventing him from being able to continue teaching. Plaintiff also alleges that Franciscan University knew, or should have known, that the evaluation process was flawed yet it continued to provide students with the opportunity to attack a member of their community in this way. The promotion of this method of collecting "feedback" for the administration to use provided students with the means and opportunity to join as a member of an anonymous group, while knowing that their actual identity would be protected by the University policies.

**Background – Franciscan University:**

14) Franciscan University is a private institution of Higher Education, which promotes and markets itself based on its *"Passionately Catholic"* identity.

15) While it is tied to both the Catholic Church and the Franciscan Order, it is not a requirement for either employees, or students, to be members of the Catholic Church:

> *"as long as their activities do not directly oppose or undermine the mission of the University. 'Non-Catholic members are required to respect the Catholic character of the University, while the University in turn respects their religious liberty.' Those who are not Catholic are welcome to partake in the full life of the University and are assured that the dignity of each individual and the right to free will decisions in matters of faith are respected." (University Mission Statement)*

16) There is a significant, if small, minority of students and employees who are not Catholic, however, the main demographic targeted for employment or enrollment are those individuals who identify with the *"Passionately Catholic"* environment - and it is this demographic which appears to be key to financial success, as was demonstrated last year (2018) when a web site "Church Militant" ran a series of articles and blog posts calling out the University for allowing a Professor to assign a text in an upper level English class which some felt was inappropriate.

17) In response, after realizing that the University stood to lose in excess of $1,000,000 of income, as a result of students (or their families) deciding against enrolling themselves or their children (a direct result of the "scandal"), the University took steps to publically and affirmatively demonstrate the primacy of the *"Passionately Catholic"* environment. It began a review of the "Academic Freedom" policy, to ensure no Professor would ever make the same mistake. This would / did replace the current / previous policy:

> *"Franciscan University encourages the Faculty, in their teaching function, to address all*

5

> *material relevant to their subject matter but, as specified in the Faculty Handbook, opposes the promotion of propositions and values contrary to Catholic teaching."*
> *(University Mission Statement)*

18) It also started the new semester (Spring 2019) with a special event: a public display of the *"Passionately Catholic"* identity, where members of the University community were asked to join with their President in taking the **Profession of Faith and Oath of Fidelity**. Although the invitation noted that taking such an Oath might not be appropriate for non-Catholics, it was left to these individuals to decide to attend the public event and "pretend" to take the oath, or not attend (where they might expect that their absence could be noticed.)

> *"Sheridan concluded his homily by inviting all members of the university community to join him in renewing the profession of faith and oath of fidelity he had taken upon assuming the university's presidency in 2013. Members of the university's theology and philosophy faculties already take the oath annually."*
> (*https://www.catholicnewsagency.com/news/amid-curriculum-controversy-franciscan-university-president-calls-for-unity-45210*) (Original e-mail only available through restricted access via University)

19) Franciscan University provides the anonymous course evaluation system and uses it for employment related decisions: continued employment, promotions / tenure, class assignments, etc. The administration responded to the publication of these comments in a manner that was consistent with an acceptance that they were valid. Although at least two students included information in their comments that made it possible for Plaintiff to identify them, the University acts as the gatekeeper and has not seen fit to provide any additional information needed for Plaintiff to name, and provide service of process, on these individuals, without a Court order. Nor has it provided detailed information or copies of any other correspondence

between students and administrators concerning this incident.

20) Although Franciscan University acted immediately to require a meeting with Plaintiff, to his knowledge at no time did they note the problematic language used in the evaluations - the evaluations being used to warn him of the negative impact he was facing. In fact the administrators responsible for investigating possible violations of the University policy on Harassment and Discrimination, as well as compliance with Federal and State laws governing workplace conduct related to membership in a protected class, only opened an initial review after Plaintiff had filed a complaint with the EEOC.

21) That initial review was concluded at the end of December. The conclusion was that no other investigation was required since 1) no negative employment action was taken by administrators / Franciscan University; 2) the students' conduct was not a violation of the University policy and, thus, no hostile environment exists.

**Background – Plaintiff:**

22) Plaintiff was hired in the latter part of 2001, and began working / teaching at Franciscan University in the Spring semester of 2002. Franciscan University had full knowledge that Plaintiff was not Catholic at the time he was hired. Originally Plaintiff was hired for a single semester, part time, and assigned additional teaching responsibilities as a reflection of his academic credentials and experience. This position was extended and later converted to a full time staff position with responsibilities that included teaching a required number of courses each semester.

23) In Spring, 2019 Plaintiff taught two classes for the Communications Department, one as a part of his contractual requirement and the second as an "overload." As he had done for all of the classes he taught at Franciscan University, he relied on the plain language contained in Vatican documents on Communication and the writings of Pope John Paul II. He used accepted

methodologies for teaching this type of material, including the use of the Socratic method, case studies and principles from the field of training and development, which included crafting the class to emulate "real world work environments" - student projects were assigned as products requested by a client, subject to delivery deadlines and using the industry standard practice "Scrum" for organizing self managing teams (reflecting his commitment to *"give special emphasis to the development of leaders for Christ and the Church through teaching programs and experiential learning situations"*). Grades were assigned based on objective criteria and *"based solely on academic performance"* as per University policy.

24) Plaintiff spent the next two months researching, documenting and crafting a comprehensive review of the situation, including:

  A)  detailed references to the plain language found in key Vatican documents on Communication and the writings of Pope John Paul II supporting his pedagogical choices;

  B)  analysis of the inherent issues and limitations in using self reporting, anonymous, student comments as a basis for making employment decisions, when the specific language in the comments demonstrated student prejudice against someone who was not Catholic;

  C)  direct rebuttals of the specific comments, demonstrating they were based on impermissible prejudice, were immaterial, were misleading (or showed that students no understanding of the guiding principles in the Vatican documents) and simply failed the Catholic Church's own criteria for "honest and truthful" communication.

25) Plaintiff delayed filing any legal action in a good faith effort to give University administrators a chance to investigate and respond. Due to the nature of the incident occurring in an employment context he filed a timely complaint with the EEOC to ensure those causes of action and remedies were not lost.

8

**Relief Sought:**

26) While it is difficult to calculate the exact value of the damages suffered, Plaintiff suggests that the Court simply look to values accepted by defendants. Students at Franciscan University pay roughly $25,000 / year for basic tuition, etc. not including room and board. That places a reasonable value on academic credentials. Since the intent was to deprive Plaintiff of the value of his academic credentials, which (ignoring things like military training credits) totals 9 years of undergraduate and graduate education, the nominal value of this loss is $225, 000.

27) Alternatively, the University placed a value on his service, based on his annual salary and benefits, such as medical and retirement. Since Plaintiff lost between 3 and 5 years (based on his plans recounted to his Chair prior to this incident) of employment damages could be calculated using these numbers.

28) To this Plaintiff would ask for any additional punitive and statutory damages that are deemed appropriate, by the Court, as well as equitable legal mandates to allow the University to understand the severity of the situation that is present and address it.

**Certification and Closing:**

29) Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

Signature: _____  Date: 13 Jan 2020

Dale Prey, Plaintiff

45811 Cadiz-Harrisville Road

Cadiz, Ohio

43907

10